Good morning. I'm Anita Kowalczyk and I am here on behalf of the appellant I.L. who was a minor attending the Houston Independent School District School, which was high school for the performing and visual arts, which is a specialized high school. It's not a school where students are zoned to it, but one where students apply to go to it, specifically for an arts program, like my client, or for music, as the facts will explain. I'm asking the court to reverse and remand the district court's order granting final summary judgment. Whatever happened to the fellow's criminal case? Yes, Your Honor. The criminal case, I found out shortly after the case was set for argument, that it was dismissed. Dismissed? It was dismissed, and we were very disappointed in the fact that it was dismissed. I didn't hear the question last. What did you say? It was dismissed. The district attorney's office dismissed the case. I believe they said they were concerned about sufficient evidence to move forward to a guilty verdict beyond a reasonable doubt. Okay. And that was very disappointing to us. But I think the criminal case is a fact, and its disposition is a fact that underscores... I was just interested. I'm not... Yeah, I don't think it governs the case here, but... No, I don't think it does, but what it does do is show the importance of why the school here failed in its duties under Title IX. They were obligated to provide the students a fair and equitable resolution, a prompt resolution when there's a claim of sexual misconduct or harassment on campus, and that didn't happen here. Against the backdrop of Me Too and the heightened awareness that this case brings, I see this case as setting a new bar for what a school district must do to comply with federal law. They've... They're setting the bar to such a level that a victim may never realize the benefits of Title IX and its protections, and what it was intended to accomplish, which was a quality in education that includes a safe learning environment where a student is not harassed or denied the benefit of their education. And here, we have statements in the record from school officials who acknowledge this young lady was being denied the benefits of her education. After this assault, which happened at the school orientation, she began suffering immediately from depression, anxiety, PTSD, and she was under so much stress from this experience that she began having seizures, epileptic seizures, which she had never had before. This caused her to miss quite a bit of school, and it's all noted in the record. So the teachers knew it, the assistant principals knew it, the parents were in constant communication with the school. And these are all important facts because the district court didn't really address them. The district court, in fact, even though this was summary judgment, and even though the district court should not assume everything the movement says is true, did exactly that. The evidence they discussed in the district court's opinion is all the same. They disregard the disputed fact issues that the plaintiff put forward, and there were significant fact issues. And you know, you've got the plaintiff has to establish deliberate indifference by the school. Yes, Your Honor. So could you just summarize for me what you think the school should have done and it didn't do? Indeed. And why it would have been, why the summary judgment evidence shows deliberate indifference? Yes, Your Honor. There's quite a few things that the court can look at in terms of conscious and deliberate indifference. The school learned of the incident immediately after it happened. The young lady complained, or her friends noticed something was off with her. She was very upset, very distraught, and they immediately contacted a counselor who questioned her and said, okay, stay here, we're going to get your parents. They contacted the male student who was accused, and he was separated, and they brought in the HISD police. Now, why were they consciously indifferent? At that time, immediately after they brought in the police and they spoke to the parents and both students, they made a decision, we're going to wait for the police to investigate this. We aren't going to do anything. The parents asked many, many times over and over again in their communications, in their saying, what are you going to do to this student? My daughter is not feeling safe in this environment. They asked the school to provide her an escort between classes. They said that's not feasible. Well, let me ask you a question, though. I mean, she only saw the fellow one more time throughout that school year, accidentally bumping into him in the hall. So, I mean, there's rational fear, and then there's irrational fear. I don't think that's entirely accurate, Your Honor, that she only saw him one time. We know that she at least physically bumped into him in the staircase on one occasion, and that really caused her a lot of angst. She also, they had only one lunch period for the school, and so there was no way to segregate people during the lunch period. They couldn't say he goes to the first one and she goes to the second one. So she was always going to be seeing him at lunchtime, and they had friends in common. And she testified that she would see him and that he would come up to her when she was with her friends, not to her but to the friends, making her uncomfortable, making her squirm, knowing full well that this issue was out there. To add more to Judge Davis's question about conscious indifference, the e-mails internally between the principal, the counselor, and her art teacher, because my client was an art student, the male student was music, so they weren't going to have any classes together. But when she was missing so much class, the art teacher's e-mailing the assistant principal and says, you know, we want her to get the full benefit of her education. Those exact words, but we don't think she's getting it because she's missing so much class. And we understand she now has epileptic seizures, but maybe we need to get a plan for her. Now, the assistant principal responded, it's a tough situation. All we can do is document our efforts. Well, I'm, you know, it's very unfortunate, but I'm not quite sure I see. You think if the school had expelled S.S. that her problems would have been solved? I think it would have gone a long way in making her feel less anxiety and stress about who's going to be around the class. I mean, is there any medical evidence to substantiate, in other words, did she go to a psychiatrist and the psychiatrist said, and I just don't remember because I don't think it's in the district court opinion, but the psychiatrist said that the fact that she has to be in this environment where the student still is is making her sick. There is evidence in the record, Your Honor, that the district court did not discuss that. Well, and was that? That consists of the medical records when she went to the hospital immediately after the incident. She also did go to the children's assessment center, and she received counseling throughout this time period and beyond. And how much of that was the school apprised about, and was the school apprised that removing S.S. from the school would contribute materially to her educational benefit? There were, again, multiple instances of the mother calling the school, trying to find some resolution, asking, What's going to happen? What are you going to do? They would go pick up I.L. from school early, but she became sick, and, in fact, on one occasion at least, and it's in the record, she had a seizure at school in class. And so she would see the counselors or the assistant principal, and she would say, What are you doing? What is happening? And they would constantly push her off and say, You have to wait for the police investigation. There was finally, they demanded the parents a meeting with the principal. The principal never met with them in person, but instead delegated that to the assistant principal, Mr. Trout. Mr. Trout met with them, and his own declaration says he met with them for about an hour and a half. And that hour and a half, this is where they, again, declined to offer her an escort between classes and declined to offer any resolution to suggest that he should be sanctioned. And so they basically threw their hands up in the air and decided to sit this one out and leave it to the police. Now, under Title IX, she's entitled to a fair and prompt resolution, and that is the bare minimum floor requirement. Well, why, and isn't there in the record evidence about why they deferred to the police? I don't think so. Well, I thought it had to do with the nature of the text messages that had gone back and forth between these two people and some kind of video in the hallways before and after the alleged assault. Yes. There were, this was, the incident happened at orientation in a music room. The days leading up to the orientation, they had exchanged text messages because, again, they had some mutual friends. And the text messages, which I have never seen, and they're not in the record because they were turned over to the police, but they had been testified to, and I don't think anybody disputes what was in them, which was they started out innocently, casually, and then escalated to graphic sexual innuendos, asking her for sexual photos, which she declined. And that is something they don't dispute, is that in her text messages she unopposedly said, I don't want to be your friends with benefits and I don't want to be your girlfriend. Everybody knows what friends with benefits means. So she tells him one day no, and the next day he's assaulting her. And so those text messages are one thing, Your Honor. What you're talking about goes to the consent issue. And the district court's opinion largely was conditioned on this consent issue. In that regard, the district court got it completely wrong. The girl was 15 years old. She was a minor. Under no circumstances in the law would that have been consent. Statutory assault. Yes, but unfortunately we know that things go on in high schools, right? And that's a problem. You're correct, Your Honor. It's a serious problem. It's a serious problem, and sexual assaults on school campuses at the high school level happen way more often than anybody wants to admit. And oftentimes I've been on this case on the side of defending the person who's been accused.  And did they get enough due process? Were their Fifth Amendment rights protected? Did they get noticed? Did they get to defend themselves and cross-examine people? And you've got those competing concerns about their right to stay quiet if there's a criminal action versus the victim. So here we have the opposite case. We have a victim that got absolutely no process. And she got no resolution, no closure, and ultimately tried to harm herself. She jumped out of a moving vehicle. The school didn't really deny that this had happened, did they? I mean, they didn't take the position it hadn't happened. Nobody ever did. So what would have been the point to investigate an incident that they assumed, more or less assumed, happened? I don't know, Your Honor. I can only speculate because their initial reaction seems to be they assumed it was nonconsensual because why else would they immediately call the police? And the incident with my client stands in stark contrast to what happens at the end of the school year in May. The same male student has a sexual encounter with another female, but nobody claims it's nonconsensual. But those two students got penalized. They got sanctioned. He got suspended. They suspended both students, the male and the female, for three days, and they did an investigation. And then the girl was kicked out of school and sent back to her home school, and the male student who was graduating that year was not allowed to participate in graduation activities. But the principal's own statement, which they put in the summary judgment record, said if he had not been a senior, he would not have been allowed back at that school. So it's very hard to reconcile what this school did when you had a nonconsensual encounter versus a consensual encounter. And our client was under Title IX entitled to some sort of resolution. She shouldn't have been forced to wait four years for a criminal case to not go forward. Well, but the resolution was that they told him never not to speak to her again, and he didn't speak to her again for the whole year. But, Your Honor— I mean, it's her problem. It seems to me it's totally her problem if she continues to have the same friends who are friends with him. I think what happens when we use that kind of reasoning, it's her problem. She has to deal with it, which is exactly what the counselors told her when she'd go talk to them. They'd say— I mean, it's—okay. We're really not giving the victim due process and a fair chance to be heard and to be listened to, and it's ignoring the real ramifications of a sexual assault. The PTSD, the anxiety are very real. Her epilepsy was very real. And nobody ever disputed that. And that was not preexisting. No, ma'am. No. So, on this record, I'm asking the court to look at the full circumstances and decide what is the minimum the school has to do. If all they have to do is say, don't talk to each other, stay away from each other, we're going to wait on the police, then they never have anything to do. How much of the problem here is the Houston Police Department? It was HISD. You may know. It was HISD police, actually, Your Honor. Well, either way, I mean, I sat on another case involving University of Houston, and HPD took three years. I agree with you that there's some things that we can't blame them for. I don't blame them for the four-year delay, but what I do blame them for is their failure to provide the resolution they were supposed to do. They had a process, and they could use it. They showed that later on, and so that's what we would have asked for them to do for her. Okay. Thank you. All right. You have time for rebuttal. Mr. Gilbert. Good morning, Your Honors. May it please the Court, my name is Chris Gilbert, and I represent the Houston Independent School District in this court as well as the individual defendants in the court below. While the district certainly does regret what happened to IL, Judge Nancy Atlas correctly ruled below that IL did not meet the high standard for showing that the district's response to the assault was clearly unreasonable in light of the known circumstances, which is the standard under Davis v. Monroe County. Judge Atlas noted that the school district did conduct an investigation and found that, quote, in a situation where there is some indication that the incident may have been consensual and where there is a potential for criminal charges if it was an assault, it is not. Where's your some indication that it may have been consensual? That would be the text messages between the students. Where she says, I don't want to be your friend? That was the end result. Yeah. But the point was we knew that this was not a stranger assault and it was not a sort of ongoing sexual harassment assault or bullying claim, which is what a lot of the Title IX cases are. Not the boy-on-girl stuff. Come on. No. Boy-on-girl. I mean, bullying is the little runt who gets bullied by, you know, this is — there's no question this is an outright sexual assault. Right. But it changes the calculus both of what sort of investigation is done and then what sort of steps are taken afterwards. And what I meant by that, Your Honor, was they were aware — Travis Springfield, the counselor who sat down with her and talked to her about the text messages, was concerned that it showed that there might have been a boyfriend-girlfriend relationship there. Yes, she ultimately told him in the text message. So what? I mean, if you can have rape between spouses, what's the difference about a 15-year-old having her body invaded this way? Well, and I agree, Your Honor, that ultimately that would be the conclusion. But that's what they wanted to investigate. And so what happened was they looked at both the text messages and at the surveillance video, which the principal felt showed that they were leaving the room together, walking in a direction that was contrary to what she had told them she had gone, and that she didn't seem to be upset. And so it was those two things that they felt needed to go, that they wanted to pass it on to the police because they had— But then she's in the bathroom crying uncontrollably and says she's just been assaulted. That's correct. But that's what they wanted to investigate, and that's why they put the no-contact order in place, to make sure that while the police looked into this more fully, that there wasn't any ongoing harassment. I mean, you know HPD—I mean, this is a very disturbing situation, and it seems to me that to a great extent HISD is just seeking shelter under a very, very latitudinarian standard of review. But goodness gracious, I mean, this is an outright sexual assault, and the perpetrator is still wandering around on campus. And during the middle of the day it occurs, and then he must have done it more than once because he ends up his school career that way too. Well, and I would disagree with that, Your Honor, as to the second incident that occurred at the very tail end of that school year after the plaintiff had already transferred out of the school. First of all, I believe that the plaintiffs have waived the right to argue that that violated Title IX because that was never brought up below. That issue was brought up below in connection to the equal protection claim that was brought against the principal because the mother believed that the girl, in that situation, had been kicked out of school but that the boy had not. And so evidence was put into the record to show that, no, they were actually treated the same way, but it was because he was graduating that they didn't kick him out. Well, what, if anything, was done to the assaulter here other than to say, don't get near her again? That was the major thing. That was it. I mean, there was no—he wasn't suspended? He was not suspended, no, Your Honor. There was nothing put in his—I mean, I don't know if it matters whether it was put in his record or not. He wasn't deprived of any particular benefits of being a senior or, you know, being the star in the show or something like that? Nothing, nothing. Not with respect to the first incident. That's correct. No. This is—that's the incident, this first incident. Right. Nothing. He was told specifically that he needed to stay away from her, that if she came into a room, he was supposed to leave that room, that if he ran into her in the hall— So the year is going on, and the girl is apparently pretty obviously distraught, or at least the school is being informed that her family is—that she is obviously distraught. And, you know, why isn't something being done? Because, Your Honor, I think the difference here, if you look at the case law, is you have to look at what the parents were actually reporting. The parents were complaining about the original incident. They were complaining about the fact that he had not still been punished because of the original incident. And they were complaining about her injuries arising out of the original incident. But they weren't complaining about any ongoing or new harassment. And as Judge Atlas below found out— I'm sorry. How bad does it—does he have to impregnate her for the school district to realize that something is amiss? No, Your Honor. But I— Well, I mean, this is not like the period of time in the 90s when a friend was telling me that kids were having oral sex in the stairways at school. This is much worse than that. I agree it was a significant incident, but I don't believe that what the school district did was deliberate. But, I mean, well, but, I mean, your only basis for deliberate indifference, or at least the one that persuaded the court, was that the school had deferred to the police. But how long do you have to defer to the police doing nothing before you realize that something, whatever happened, was pretty darn bad? It was a physical assault on the premises of the school, and you didn't even suspend the guy for a day. And I can't answer how long, Your Honor. I can say that there are numerous cases that have held that what the school district did in this case doesn't rise to the level of deliberate indifference. There are not many factually. How many cases are there that involve a sexual, an outright sexual assault, and the school does absolutely nothing for the entire school year? Dweese v. Bowling Green, Sixth Circuit case, was a sexual assault of a cheerleader on a bus. That case has almost the exact same facts in the sense that the parents were complaining about the ongoing presence of the student at the school. And the court in that case — and the court in that case acknowledged that there are certainly cases out there that say that a school district has an obligation to continuously evaluate what it's doing to determine whether it's ineffective in preventing future harassment and may need to step up the restrictions it's put in place. But what the Bowling Green case said in that case was, unlike — and this is a quote — unlike those cases, the sexual misconduct here was not ongoing. After the initial assault, M.D. saw R.M. in the hallway and at a handful of school events. Since M.D. does not allege that R.M. harassed her after he returned, the cases she cites are not analogous. The hold otherwise would effectively foreclose remedial measures short of expulsion and undermine the flexibility that the Davis court took to guard. Did they do any remedial measures in that case? They did. They did, Your Honor. They did suspend him in that case initially, but the issues came up after he returned because the father didn't believe he should return. In that case, they did the same thing they did in this case. They told the students to stay away from each other, and they tasked the assistant principals and the counselors — Well, at least they suspended him, which would give him an indication that they had some doubts about his conduct. I agree. I agree that that's different, Your Honor. Fitzgerald v. Barnstable is another similar case. Now, that case, they did not suspend him. That was not a pure sexual assault case. That was more of a sexual harassment, although the boy in that case made the girl lift up her skirt on the bus. And in that case, they didn't do anything to the male student other than tell them to stay apart. They told the female student that she could change buses. The parents weren't happy with that, obviously, because they said, well, that's punishing her, not him. And the court in that case said that to the extent that Jacqueline, the plaintiff in that case, and the boy continued to have random encounters in the hallways, the court said, the fact that subsequent interactions between Jacqueline and Britton occurred does not render the school committee deliberately indifferent. To avoid Title IX liability, an educational institution must act reasonably to prevent future harassment that need not succeed in doing so. Did the counselor and or the assistant principal who talked to the girl doubt her story or indicate they didn't believe her story about being assaulted? I don't know if they ever said to her, we don't believe your story. I mean, they talked to the parents and told them that they were looking into the issue of whether it was consensual or not. They never disagreed that the incident occurred. That was never an issue. Well, this behavior is not consistent with the fact that it might have been consensual. Your Honor, I would actually respect, as a school lawyer, I would respectfully disagree with that. I mean, in this, he's alleged to, they were essentially alleged to have gone into the practice room. No, I'm sorry. I mean, her, the way in which the series of problems that occurred with her over the course of the school year, if they were triggered by this event, are not consistent with consensual conduct. And that's why I agree with that, and I think that's why they put in place the no-contact order while they tried to determine that issue, because in this case, as a school district, we have concerns not only about the female student, but also about the male student. We want to make sure that everybody's rights are protected. I understand that, but what I'm saying is there's no, unlike the shibboleths in, you know, out there in the political realm, there is no doubt about what happened to the girl physically. Nobody challenges that. Her subsequent conduct was immediately traumatized and displays ongoing and perhaps increasing trauma. I don't know for sure. I'm assuming they're exaggerating a little bit, but it's, I mean, there's nothing that suggests that S.S. should have gotten off scot-free. I agree, Your Honor, that in hindsight, they certainly could have disciplined him more significantly. However, as was indicated by the second incident, if they had determined that this was a consensual incident and punished him for that, sort of a lesser punishment for a consensual incident, they would have, if they had done the same thing that they did with the second group of students and were sort of hypothesizing at this point, they would have disciplined both students and they would have sent them back to their home schools, which obviously would have been, that would have been terrible for I.L., and so that's what they were trying not to do in the interim, and unfortunately the interim took too long. Well, I'm not sure that that would have been the result because I don't know enough about the second incident, but I am, because what we're dealing with here is undisputed sexual assault, and over the next couple of months it should have become increasingly clear, even to the school, that this girl had been traumatized. I think, Your Honor, so I do want to address that. I think if you look at what the parents were reporting, I think there is exaggeration going on there, and that's what Judge Atlas found when she looked at all of the various things that the parents alleged. I.L. does admit that the student never attempted to talk to her and never attempted to contact her again. Now, the lawsuit alleges that there was ongoing, continuing harassment and intimidation by the male student. I didn't say that. I'm talking about PTSD. I'm talking about epilepsy, if that could have been triggered by this. I'm talking about the incident where she attempted to harm herself, where she's hospitalized for a period of time. If there was, if the parents were informing the school that all this is a result of the encounter, then the school ought to know that the young man has done something really bad. He ought to know it. First of all, to address two issues, including an issue you asked of plaintiff's counsel, I don't believe there's any evidence in the record that the epilepsy was caused by this incident.  as to what caused the epilepsy. There is no evidence in the record, and you asked this question specifically, that a medical person ever told the school district that I.L. is suffering because of the assault or because of what SS, continuing to suffer. We knew that she was being counseled. We knew that she was going, that she was being treated for the epilepsy. But the schools deal with a lot of students who have issues like epilepsy. And I disagree that the school was being, was turning a blind eye to that. If you look at the evidence, the record shows that they were attempting to talk to the parent about setting up a 504 plan to specifically deal with the epilepsy and the absences that it was causing. And that's in Assistant Principal Rodriguez and Counselor Springfield's affidavits and the e-mails that they attached. The e-mail that references documenting and says there's not anything more we can do about this was not about anything related to the Title IX investigation. The school district people testified that it was their understanding. And part of what made this hard to deal with was it wasn't like this was a student who had no problems and then all of a sudden she started having problems. She had ongoing issues and she had the ongoing epilepsy issue. And so what the Assistant Principal and the Counselor testified to was that it was their understanding. They didn't realize when the parents were calling and saying we have concerns about the fact that she's sad or we have concerns about her well-being, they didn't understand that those were issues that were stemming from the assault. They felt that those were issues stemming from the epilepsy and the health issues that she had going on, which is why their reaction was to reach out to the parents and say, okay, we need to set up a 504 meeting under Section 504 of the Rehabilitation Act to put a plan in step. That's the first step that a school district does before they go so far as turning to the Individuals with Disabilities and Education Act. That's usually the second step. And so in this case, the e-mails show that they were trying to get the mother to respond back about setting up a meeting, and Mom was not responding back, and that was the reference to all we can do is document. Well, I know I wasn't referring to that specifically, but you're saying there is no evidence that the school was informed post-assault that the young lady was having a problem, psychological problems caused by that assault. No. Well, caused by the assault, I wouldn't. There may have been evidence to that. There was nothing. Nobody ever told the school it would help if you get rid of SS if they went that far. So they knew that they were dealing with issues stemming from the assault, but I don't know that they ever got. Honestly, I don't remember exactly what the medical records were. The records were furnished to the school. Excuse me? Medical records were furnished to the school. A very few amount were, and it was usually in connection with absences that she was gone. It does seem like the punishment was inconsistent when they suspended the boy and girl for the consensual contact and yet didn't do anything on the assault. So the reason why, and again, I think they've weighed that issue below. The reason why I think that that's different is that was consensual from the start. There was never any question about that one. That was a, and again, you can get into the issue of whether minors can legally consent to sex or not, but that was two kids messing around in the bathroom, and there was never any question that both of them were willing participants in that. That's one reason it seems inconsistent to me. Right. Well, I think there they didn't need to do an investigation. They could move forward because there was no question as to the issue of consent.  in addition to SS. Is that what you're saying? No. I think that they wanted to gather all the evidence to be able to make a more informed decision. But they didn't. They deferred to HISD, and it went on and on and on and on and on. It did. It went on longer than they had wanted, and then she left in February of that year. Somebody thought that when she's found in the bathroom crying uncontrollably after all this has happened that maybe she's not really telling the truth because she said he didn't, because there were text messages, but she said she didn't want to be his girlfriend, and then there was what appeared to be an equivocal video of the hallway that nobody said that hasn't been introduced in the record, right? The video? No, it was not introduced into the record, but the principal in his affidavit described what he remembered seeing in that video and why he felt it showed that there was at least an issue there as to whether this was consensual or not. From a legal standpoint, is it deliberately indifferent for the school district after a certain period of time not to renew an investigation when it knows that a physical assault has occurred in the premises? I don't know the answer to that, Your Honor. I've read, I think, most of the Title IX cases, because this is not my only Title IX case, and I don't believe I've ever seen a case that said that the obligation changes after a period of time. I think in this case they weren't deliberately indifferent because they took interim steps to try to protect and separate the students that Judge Atlas found were effective. You know, in a sense, I'm even less sympathetic to the school's position because it's the HISD, the school district police, who screwed around with this, not the Houston Police Department, which doesn't even have enough personnel to monitor murders anymore. So why don't the HISD police make a physical assault on the premises a matter of top priority? I can't answer that question. I mean, you've got two people. You only have to interview two people. And I think that's a good idea, Your Honor. I can't answer that question because that evidence isn't in the record. Well, I think I've touched on everything I was going to touch on. If there are no further questions from the Court, I'll yield the rest of my time back. Thank you. Thank you, Your Honor. Your Honors, I have a few points I'd like to respond to. One is, under Title IX, they are supposed to delegate a Title IX coordinator who is supposed to implement the procedures for complaints such as this one to investigate them, to resolve them, and to inform the student and her parents of what those policies and procedures are. And their interrogatory answers, they didn't identify a Title IX coordinator. And I still don't know if HISD has one. If they'd had one, which they're legally mandated to do, it would have gone a long way, perhaps, to change the outcome in the situation. Your question, Judge Jones, about can they go all year and at what point does it become a deliberate indifference if they don't renew their interest and say, hey, we need to do something by the end of this school year, is a good question. And I think you hit the nail on the head. Every time the parents spoke to the school, they said we have to wait for the police investigation. In December of 2014, when they met with the assistant principal, in preparing for the meeting, he said I called and spoke to the HISD police and they gave me an update and they're still investigating. And this could take many months. So they knew how long it was going to take. They knew they weren't going to get anywhere very fast. And they didn't care. The suggestion that the school didn't know this girl was having problems related to the trauma is absurd. It really strains credibility to say that. Where is it? Well, don't just, you know, emote. Where's the evidence in the record? The assistant principal says he met with him for an hour and a half. Testimony from him. When was that? Pardon me? When? In December of 2014, which was an August incident, and so this happens in December, their meeting. The mother and the father also testified to meeting with him and talking to him about what can they do to make her feel safe. She doesn't feel safe, and what are you going to do to punish this guy? And that's when they kept telling the parents this isn't feasible. They've tried to say, oh, the parents only came to tell us they were going to sue us. Well, did they take an hour and a half to have that conversation? The parents went there. If they weren't there to talk about the trauma and the effects on their daughter, then what were they there to talk about? They were there explaining what was going on with her. Yes, she had by December been diagnosed with the epilepsy. She'd had the seizure in class. There were other symptoms of her trauma that she was suffering. She would go to the nurse for stomach aches, anxiety, headaches. Well, I mean, there is something in the record, isn't there, about her seeing one of the counselors repeatedly and just smiling and saying everything was okay or something like that? So that's one of the things that the school claims they did to help them feel safe was to tell IL she could go talk to the counselor anytime. And so the counselor says, when I would see her in the halls, I'd ask her how she was doing. What student is going to stop in the middle of the hall and say, well, I'm about to have an anxiety attack or this is happening? They didn't take any sincere or serious interest in what was happening with her to make her feel like they cared because when she did go to them, the few times she testified she went to them, they basically said, you've got to deal with it. It's a small campus. You might run into him. Nothing we can do about it. How many students are at that high school? I saw in the record last night I believe around 700. So they're deliberate. Was the counselor opposed? No, Your Honor. The only testimony from the school came by multiple written declarations written at different times that were repetitive and sometimes different. They were inconsistencies even within their own declarations. And they mentioned it as boilerplate, but even still when counsel argues that we waived the argument related to the second incident where the male student was punished, I don't know how he makes that claim. We're using facts he put in the record, and we're bringing them to the court's attention. So I don't think there's any real legitimate argument about the waiver there. With respect to the video, quickly, IL's counsel objected to his admission because it was not produced until the close of discovery, and it was objected to in her response. But she would dispute what the video shows because the video is consistent with what she says happened before the incident. And they had the assistant principal say, oh, I looked at it, and this looks like it happened after the incident. He wasn't there. So his testimony on that has no credibility and shouldn't even be considered at all. Finally, one of the driving concerns that I know this Court has when they're reviewing Title IX cases is not wanting to second-guess the administrative decision of a school and what they do and how they manage their daily affairs and punishments. Make it quick. You red light? But there was no decision here for this Court to second-guess because they did nothing. And so for those reasons, Your Honor, because we've raised sufficient evidence that it's a genuine issue of material fact on the conscious indifference and whether their actions were clearly reasonable, we're asking you to reverse the district court's judgment. Thanks. Thank you.